| | |
|---|---|
| **LAQUANDA FAVORS,** | |
| **Plaintiff,** | |
| **v.** | Civ. No. 18-234-KM |
| **NANCY A. BERRYHILL, Acting** | **OPINION** |
| **Commissioner of Social Security,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Ms. Laquanda Favors brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381.

The issue presented is whether the decision of the Administrative Law Judge ("ALJ") to deny Favors's application for DIB and SSI is supported by substantial evidence. Favors argues that the ALJ improperly weighed the various medical opinions in the record and reached contradictory conclusions.

For the reasons stated below, this Court affirms the ALJ's decision.

## I.    Background

Favors seeks to reverse the ALJ's finding that she did not meet the Social Security Act's definition of disabled from April 15, 2012, the alleged onset date, through March 9, 2017, the date of the ALJ's decision. (R. 24).[1]

---

[1]    Citations to the record are abbreviated as follows:

"DE"  =    Docket entry in this case;

"R. _" =    Administrative Record (DE 8) (The cited page numbers correspond to the number found in the bottom right corner of the page for all DE 8 attachments);

"PBr." =    Brief in Support of Plaintiff Favors (DE 11);

On September 12, 2013, Favors applied for DIB under Title II, alleging that she suffered from bipolar disorder. (R. 79, 180-88). On April 9, 2014, Favors applied for SSI under Title XVI, alleging a disability onset date of April 15, 2012. (R. 191-97). Her application was denied on February 4, 2014 (R. 79-91), and upon reconsideration on October 14, 2014. (R. 92-123).

On January 6, 2017, Favors appeared before the ALJ with a non-attorney representative and testified. (R. 11, 30, 32). Daniel Wolstein, a vocational expert *("VE"), also testified. (*Id.*). After the hearing, the ALJ held the record open for seven days to allow for the submission of additional medical records, which Favors submitted and the ALJ considered in rendering his opinion. (R. 11).

On March 9, 2017, the ALJ issued a decision finding that Favors was not disabled within the meaning of the Social Security Act. (R. 11-24). The ALJ determined that Favors's mental impairments (depression, anxiety, bipolar disorder and personality disorder) were severe, but not of listing-level severity. (R. 14-16). The ALJ concluded that Favors, given her residual functional capacity ("RFC"), was able to perform work existing in the national economy. (R. 16-24).

## II.    Standard

To qualify for DIB or SSI, a claimant must meet income and resource limitations, and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A), (B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

---

"SSABr." =    Social Security Administration Secretary's Opposition Brief (DE 12).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to

factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

### B. The ALJ's Decision

The ALJ followed the five-step process in determining that Favors was not disabled from April 15, 2012, the alleged onset date, through March 9, 2017, the date of the ALJ's decision. The ALJ's findings may be summarized as follows:

**Step 1:** At step one, the ALJ determined that Favors had not engaged in substantial gainful activity in the relevant period. (R. 13).

**Step 2:** At step two, the ALJ determined that Favors had the following severe impairments: depression, anxiety, bipolar disorder, and personality disorder. (R. 14).

**Step 3:** At step three, the ALJ determined that Favors did not have an impairment, or combination of impairments, that met or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 14-16). Under Section 12.00 of Appendix 1 ("Mental Disorders"), the ALJ concluded that Favors's impairments did not cause at least two "marked" limitations, or one "extreme" limitation, under the Paragraph B criteria for mental functioning. (*Id.*).

To satisfy the Paragraph B criteria, a claimant's mental disorder must result in an extreme limitation of one, or a marked limitation of two, of the four Paragraph B areas of mental functioning. Of the four areas evaluated for mental functioning, the ALJ found a marked limitation in only one area — interaction with others. (R. 15). The other three other areas of mental functioning that are considered in evaluating an impairment are the claimant's ability to (1) understand, remember, or apply information; (2) concentrate, persist, or maintain pace; and (3) adapt or manage oneself. The ALJ determined that in those three areas, Favors had only moderate limitations. (R. 14-15).

**Step 4:** At step four, the ALJ concluded that Favors had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions." (R. 16). The ALJ further determined that Favors is "able to make simple work-related decisions." (R. 16). The ALJ found that Favors is able to occasionally interact with supervisors and coworkers, but cannot work on a team or with other coworkers, and cannot work with the public. (R. 17).

5

The ALJ also concluded that Favors was unable to perform past work, which included work as a fast food manager or worker, waitress or cashier. (R. 22).

**Step 5:** At step five, the ALJ considered Favors's age (28), education (completed high school), and work experience in conjunction with the Medical-Vocational Guidelines. (R. 23). Relying on the testimony of the VE, Daniel Wolstein, the ALJ identified several representative unskilled jobs Favors could perform despite her limitations: (1) cleaner housekeeper (Director of Occupational Titles ("DOT") #323.687-014); (2) sorter — agricultural products (DOT #529.687-186); and (3) laundry worker (DOT #361.684-014). The ALJ also determined, based on expert's testimony, that a significant number of these jobs were available nationally. (R. 23-24).

Accordingly, the ALJ concluded that Favors was not under a disability, as defined in the Social Security Act, from April 15, 2012 through March 9, 2017. (R. 24).

### III. Discussion

Favors challenges the ALJ's determination that she was not disabled during the relevant period. In particular, Favors contends that the ALJ's RFC finding is not supported by substantial evidence. (PBr. at 18-23, 24-26). Favors further argues that the ALJ improperly weighed the various medical opinions in the record, a flaw that which infected the ALJ's determinations at Step 4. (PBr. at 23-24, R. 15).

### A. Credibility Determination

Favors argues that the ALJ improperly dismissed her subjective complaints and otherwise ignored evidence. (PBr. at 18-23). Favors challenges the ALJ's finding that Favors's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the records in evidence. (R. 18; PBr. at 18-23).

RFC is an assessment of the most a claimant can do despite his or her impairments. 20 C.F.R. § 404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms

that can reasonably be accepted as consistent with the objective medical evidence, and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529.

In evaluating a claimant's symptoms for RFC purposes, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). However, a claimant's statements about his or her

> pain or other symptoms will not alone establish that [the claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant] is disabled. In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ must] consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [him or her].

*Id.* (alteration added); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider subjective symptoms when ALJ found that subjective symptoms were inconsistent with objective medical evidence and claimant's hearing testimony).

Once an underlying physical impairment has been shown, the ALJ must next evaluate the intensity and persistence of the claimant's symptoms to determine how they limit a claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). In evaluating the intensity and persistence of those symptoms, an ALJ should consider all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, statements from the claimant, and his or her treating or non-treating source, or statements from other persons. *Id.*

7

When a claimant's alleged symptoms suggest a greater level of impairment than can be supported by the objective medical evidence alone, an ALJ should consider the following factors to assess the credibility of a claimant's statements: (i) the extent of the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

It is true that the ALJ must consider all relevant evidence, including subjective complaints, in determining the RFC. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)). However, the claimant retains the burden of supporting his or her alleged RFC limitations. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *see also* 20 C.F.R. § 404.1545(a) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity.").

An ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). Nonetheless, the ALJ's credibility determination "must contain specific reasons for the finding of credibility, supported by the evidence in the case record." *See* 20 C.F.R. §§ 404.1529(b), 416.929(b).

In this case, the ALJ properly articulated specific reasons for the credibility findings, which were substantially supported by the evidence in the record. The ALJ determined that Favors had a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. However, the ALJ also found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible in

light of the objective medical and other evidence in the record, which included Favors's own testimony, her course of treatment, and daily activities.

The ALJ explicitly considered Favors's testimony and subjective complaints. (See R. 17-18). The ALJ cited Favors's testimony that she was able to take care of her four children, prepare simple meals, engage in household chores, visit family and friends, manage her finances, go shopping, and take care of her personal hygiene. (R. 18). Favors was able to drive herself to the consultative examination unaccompanied. (Id.). The ALJ recognized that this testimony was consistent with a function report Favors had filled out. (See R. 253-60).

Favors argues that the ALJ nevertheless failed to recognize that "most of" Favors's symptoms "are by their very nature intermittent." When her symptoms are "active," she says, she is unable to complete those daily activities without help. (PBr. at 19).

In support of that argument, Favors cites evidence that the Division of Youth and Family Services[2] ("DYFS") intermittently had a case open against Favors, suggesting that she is (or is sometimes) unable to take care of her children. (PBr. at 19-20 (citing R. 402, 445)). The record items cited by Favors do not clarify the precise extent of DYFS's involvement with the family. DYFS's involvement does not in itself suggest that Favors is unable to take care of her children. Moreover, DYFS's conclusions appear to suggest the opposite. DYFS investigated allegations of abuse and neglect, and determined that the allegations were unfounded. (R. 440). While it is true that the ALJ's decision does not explicitly refer to DYFS's involvement, that omission is surely harmless.

Various other record items establish Favors's ability to take care of her four young children as a primary caretaker, which includes taking care of an

---

[2]     On June 29, 2012, the Governor of New Jersey reorganized and renamed the Division of Youth and Family Services to the Division of Child Protection and Permanency. L. 2012, c. 16.

infant. (R. 18, 45-46, 63-64, 253, 270, 276, 456). The ALJ also noted that there was a significant period where Favors was not taking her prescribed medications, which nonetheless did not impede her ability to take care of her children. (R. 18, 451).

Next, Favors points out that, when her symptoms did "flare up," she received assistance from the State's Bridgeway Program and from her daughter. Favors claims that ALJ ignored that Favors is unable to go to the store when she is experiencing symptoms. (PBr. at 20-21). However, the record demonstrates that the ALJ explicitly considered the records from Bridgeway and properly concluded that the records did not support more than a moderate limitation. (See R. 16).

Favors relies heavily on the August 22, 2013 Bridgeway program intake assessment, which noted that Favors "needed hands-on assistance" in certain tasks. However, that same report noted that she was "self-sufficient" in a majority of the areas that were assessed, which included her ability to engage in personal hygiene, perform household chores, cook meals, shop, use public transportation, and maintain her housing. (R. 16, 494-93).[3] Taking the entirety of the report in consideration, I conclude that the ALJ's findings were supported by substantial evidence in the record.

Favors also argues that the ALJ failed to take into account her testimony that her daughter helped her perform household chores when her symptoms were active. (PBr. at 20). This testimony was contradicted by other documentary evidence in the record, upon which the ALJ was entitled to rely, that suggested Favors was self-sufficient in this area. (R. 271, 491-92).

As to Favors's ability to independently manage her finances (PBr. at 20), the record amply supports the ALJ's finding. (See R. 272-74, 276). Favors

___

[3]     After this intake form was completed, Favors attended outpatient medication-management at Union County Psychiatric Center ("UCPC") Behavioral Healthcare from approximately August 2013 through 2016 (R. 365-84, 442-59). After Favors began receiving treatment and medication management, subsequent reports from Bridgeway and UCPC were more positive than the intake form relied upon by Favors in this appeal. (R. 365-84, 442-59).

argues that the record establishes at most that she received and spent state benefits. (PBr. at 20). That is inaccurate. The record includes evidence that Favors was able to pay her bills, shop in stores, use a checkbook and money orders, and handle a savings account. (*Id.*).

Finally, the ALJ properly took into account evidence that Favors could hold jobs that involved limited interactions with others, such as laundry worker, agricultural sorter, and cleaner housekeeper. (PBr. at 22; R. 16-17, 86-88, 103).[4] *See Anderson v. Comm'r of Soc. Sec.*, No. 07-1680, 2008 WL 619209, at *9 (D.N.J. Mar. 4, 2008) (finding ALJ's decision supported by substantial evidence which accounted for plaintiff's ability to handle limited social interactions where a vocational expert identified work in which working with people is "not significant"). Favors does not present any substantive argument that these identified jobs, which would involve limited social contact, fail to accommodate her limitations as to interaction with others. (PBr. at 22).

In sum, the ALJ's findings in these areas were supported by substantial evidence in the record.

### B. The ALJ's Consideration of Medical Evidence

Favors raises multiple arguments that the ALJ improperly weighed the various medical opinions in the record. (PBr. at 23-29).

First, Favors argues that she should have been found disabled based on the opinion of a treating nurse, Kathleen Waldron. (PBr. at 23-24). In particular, Favors contends that the ALJ improperly failed to adopt Waldron's entire opinion into the RFC finding.

Second, Favors contends that various medical opinions supported a finding that she had a weak memory and was unable to understand and

---

[4]     Favors testified that she was terminated from her last job because her mother "wouldn't help me watch the kids anymore so I then demoted myself to Crewmember and they thought that I was going to do everything I was doing when I was a manager and they kept bothering me and I got into it with the manager." (R. 55). At that time, however, Favors was heavily drinking alcohol, and she was not yet in treatment. (R. 393, 395).

11

remember simple instructions, which should have resulted in a "marked" limitation, instead of "moderate" limitation, in the RFC finding. (PBr. at 25-27).

Third, Favors argues that the ALJ improperly rejected the opinions of several treating physicians. (PBr. at 27-29).

I address those arguments in turn.

### 1. Waldron Opinion

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments constitute medical opinions.

20 C.F.R. § 404.1502 lists the "acceptable medical sources" that can provide evidence to establish an impairment. "Treating source means [an] acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.927(a)(2) (alterations added). Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2).

"[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir. 1986)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

Favors argues that the ALJ credited the opinion of a nurse, Kathleen Waldron, APN, but inconsistently failed to adopt that nurse's opinion in its entirety. The ALJ adopted Waldron's opinion that Favors was "seriously limited *but not precluded* from understanding and remembering simple and short instructions, maintaining attention for two-hour segments," and being aware of normal hazards. (R. 20 (emphasis added), 478). The ALJ also noted that "while [Nurse Waldron] also opined the claimant would be absent from work due to marked limits in concentrating, persistence, or maintaining pace and extreme limits in social functioning, [the claimant] had a fair response to pharmacotherapy and psychotherapy." (R. 20). Favors argues that the ALJ should have also adopted Waldron's conclusions that Favors would be absent from work due to "marked" limitations in concentrating, persisting, or maintaining pace.[5] (R. 20).

The ALJ evaluated and correctly noted that Ms. Waldron is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d), 416.902, 416.913(a); *Rickabaugh v. Berryhill*, 271 F. Supp. 3d 721, 734 (D. Del. 2017) (finding that a nurse practitioner was "not an 'acceptable medical source' that can 'establish ... a medically determinable impairment.'").[6] That is

[5]     Favors also argues that the RFC finding fails to include that Favors requires "independent management." (PBr. at 25-25; *see* R. 20 (stating that Waldron's opinion is "consistent with the correlating treatment records which reflect that the claimant requires independent management." (citing R. 458 ("exhibit 9F")). Favors believes that this statement means "independent management" in the workplace, which should have been reflected in the workplace restrictions by the vocational expert. (*See* PBr. at 25 n.7). That is incorrect. The ALJ's opinion and citation to the UCPC record note that, due to the comorbidity of bipolar disorder and alcohol abuse, Favors required independent management of these two issues. (R. 458).

[6]     For claims filed on or after March 27, 2017, a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title" is considered an acceptable medical source. 20 C.F.R. § 404.1502 (a)(7). On September 12, 2013, Favors applied for DIB; on April 9, 2014, Favors applied for SSI, well before the change to the regulations.

not to say, however, that such evidence is wholly irrelevant. "[E]vidence from nurse practitioners may be used to show 'the severity of [an] impairment[] and how it affects [a claimant's] ability to work.'" *Rickabaugh*, 271 F. Supp. 3d at 734 (quoting 20 C.F.R. § 404.1513(d)) (alterations in original).

Waldron's opinion therefore was not entitled to controlling weight; in fact, the ALJ was not *required* to consider Waldron's opinion at all. *See Chandler*, 667 F.3d at 361-62 ("the ALJ found persuasive and incorporated [a nurse practitioner's] opinion that Chandler cannot sit for more than thirty minutes at a time, even though the ALJ was not required to consider [nurse practitioner's] opinion at all because, as a nurse practitioner, she is not an 'acceptable medical source.'"). The ALJ did consider Waldron's opinion, however, concluding that it was within the scope of her professional specialty and based upon her treatment history with Favors, and gave it "great weight." (R. 21). Even a physician's medical opinion, however, need not be accepted in its entirety. *See Wilkinson v. Comm'r Soc. Sec.*, 558 Fed. App'x 254, 256 (3d Cir. 2014) (rejecting claimant's argument that ALJ, who gave doctor's opinion "significant weight," could not decline to thereafter adopt any of that doctor's particular findings without explanation; holding that "[a]s an initial matter, no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."); *see also Thompson v. Comm'r of Soc. Sec.*, No. 15-2031, 2016 WL 2978610, at *4 (D.N.J. May 23, 2016) (holding same) (citing *Newsome v. Astrue*, No. 11-1141, 2012 WL 2922717, at *6 (S.D. Ill. 2012) ("[T]he fact that he gave 'great weight' to Dr. Naseer's Opinion does not mean that he was required to adopt it wholesale.")).

Other substantial evidence fully supported the ALJ's ultimate conclusion that Favors had moderate, instead of marked, limitations in regards to concentration, persistence, or maintaining pace. This area of mental function

> refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do;

14

working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(3).

The ALJ determined that the UCPC treatment records reflected concentration and attention that were impaired at times, but intact overall. (R. 15, 453, 456) The examinations of Drs. Gollin and Dr. Perdomo revealed fair concentration and attention. (R. 15, 344, 363) Dr. Yalkowsky's examination demonstrated that although Favors had limited recall and appeared distracted, she could nonetheless perform simple calculations. (R. 15, 362) Favors herself reported that she was able to handle her finances (R. 15). The ALJ additionally relied on Favors's overall unremarkable clinical findings; her conservative and routine treatment; and her daily activities (Tr. 18-19, 22).

The ALJ was not required to adopt all of Waldron's opinion, despite giving it great weight. In light of other evidence, some of which was also given great weight, the ALJ was entitled to discount part of Waldron's opinion. *See Thompson* 2016 WL 2978610, at *4 (finding no error where ALJ did not accept physician's opinion in its entirety where, "[a]lthough the ALJ gave [the physician's] opinion 'great weight,' the ALJ's RFC determination was based on multiple sources of evidence").

In sum, I conclude that the ALJ's decision not to accept Waldron's opinion that Favors would be absent from work due to a "marked" limitation in concentrating, persisting, or maintaining pace was substantially supported by the evidence in the record.

### 2. Understanding, Remembering, or Applying Information

Favors contends that the ALJ reached two contradictory findings — the RFC determination contained "*no restrictions* at all in understanding, remembering, or carrying out short and simple instructions," but also

determined that the record "supports moderate limitations in...remembering and carrying out simple instructions." (PBr. at 26 (citing R. 16, 19)). Favors further argues that the ALJ gave "great weight" to medical opinions that supported finding a marked limitation in terms of Favors's memory and ability to understand and follow instructions, but nonetheless ascribed a moderate limitation to this area of mental functioning. (PBr. at 26-27).

The Paragraph B criteria for "understanding, remembering, or applying information" provides as follows:

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(1).

I do not read the ALJ's decision as reaching two inconsistent results regarding Favors's ability to understand and recall information. The ALJ found a moderate limitation in understanding, remembering, or applying information. (R. 15). This finding was supported by substantial evidence. The ALJ reached this determination based on Favors's ability to understand and follow instructions of moderate complexity at the consultative examination with Dr. Perdomo. (R. 15, 362). The ALJ noted that Favors's treatment records reflect that she could verbalize understanding of treatment plans and options; she had good judgment and insight upon examination; and she testified that she had been able to complete certificates in early childhood education and medical assistant training after high school. (R. 15, 43).

This determination of a moderate limitation was also supported by the opinions of the state agency physicians, Dr. Flaherty and Campion, as conceded by Favors. (PBr. at 25 ("State agency physicians Dr. Sharon Flaherty and Dr. Robert Campion both found that Ms. Favors had a moderate limitation

in the ability to understand and remember even very short and simple instructions." (citation omitted))).[7] Similarly, Ms. Waldron indicated that Favors was "seriously limited, but not precluded" in understanding and remembering very short and simple instructions. *See Wright v. Astrue*, No. 8:11-cv-2439-TLW-JDA, 2012 WL 6947788, at *14 (D.S.C. Dec. 11, 2012) (stating that "poor" or seriously limited, but not precluded ability to maintain concentration and attention was supportive of only moderate limitations in concentration), *report and recommendation adopted by* 2013 WL 314757 (D.S.C. Jan 28, 2013).

The RFC finding reflects this moderate limitation by identifying "the following *nonexertional limitations*: The claimant is able to understand, remember and carry out *simple* instructions[.]" (R. 16). I do not read this statement as imposing "no restrictions at all." Moreover, the ALJ's decision of moderate limitation regarding this particular Paragraph B criteria was supported by substantial evidence in the record.

### 3. ALJ's Assessment of Opinion Evidence

Last, Favors alleges that the ALJ erred by assigning "little weight" to the opinions of Dr. Daniel Gollin, Dr. Ernesto Perdomo, Cecilia Robin, APN, and Dr. D. Patel. (PBr. at 27-29). Favors argues that these opinions support a disability finding.

I note at the outset that the ALJ considered the opinions of these professionals but discounted their value for various reasons. When an ALJ totally rejects a medical opinion, he or she is required to point to "contradictory medical evidence." *Cunningham v. Comm'r of Soc. Sec.*, 507 Fed. App'x 111, 118

---

[7]    In February 2014, Dr. Sharon Flaherty, Ph.D., a state agency psychologist, opined that Favors had significant difficulty with people, particularly the public, and opined that Plaintiff could perform simple, repetitive tasks. (R. 86-88). Dr. Flaherty opinioned that Favors was not disabled (R. 89-90).

In October 2014, Robert Campion, M.D., a state agency psychiatrist, affirmed Dr. Flaherty's opinion (R. 103). Dr. Campion explained that Plaintiff could perform simple work and would be able to adapt to normal changes. (R. 103). With respect to Favors's difficulties with social interactions, "she would be able to manage satisfactorily" "in a work setting with limited contact with the public, coworkers, or supervisors" (R. 103).

(3d Cir. 2012). Where, as here, the ALJ is discounting, rather than rejecting, opinion evidence, he or she must "consider all the evidence and *give some reason* for discounting the evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (emphasis added).

Cecilia Robin, APN, a nurse, completed a two-page form for the State of New Jersey Division of Family Development in May of 2014, and opined that Favors is disabled due to paranoia, hallucinations, mood swings, anger and depression. (R. 21, 461). On that form, Robin also indicated that Favors's bipolar disorder resulted in an incapacity to comply with the WorkFirst NJ (WFNJ) work requirement (R. 461). The ALJ ascribed "little weight" to Robin's opinion.

First, the ALJ correctly determined that Robin is not an acceptable medical source. *See supra.* The ALJ further properly rejected Robin's conclusory opinion that Favors is disabled. An opinion, even of a medical professional, stating that a claimant is "disabled" or "unable to work" is not a "medical opinion" and is not entitled controlling weight. Whether a claimant is "disabled" within the meaning of the Act is an administrative determination reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("[The Commissioner] is responsible for making the determination or decision about whether [a claimant] meets the statutory definition of disability. ... A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [a claimant is] disabled."); 20 C.F.R. § 404.1527(d)(3) ("[The Commissioner] will not give any special significance to the source of an opinion on issues reserved to the Commission described in paragraph (d)(1)."); *Chandler*, 667 F.3d at 361.

The ALJ also recognized the conclusory nature of the opinion, which failed to specify particular functional limitations on Favors's ability to work. (R. 21); *see Kurilla v. Barnhart*, 2005 WL 2704886, at *5 (E.D. Pa. Oct. 18, 2005) (ALJ may properly reject opinion "'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." (citation omitted)).

Accordingly, I reject Favors's argument that the ALJ's discussion of Robins was "conclusory and not supportable." (PBr. at 28).

I next address the opinion of Dr. D. Patel, a psychiatrist from UCPC who completed a one-page "Verification of Disability" form on May 20, 2015. (R. 462). On that form, Dr. Patel indicated that Favors is disabled pursuant to the U.S. Department of Housing and Urban Development ("HUD") regulations, which defines a disability as "[a] person with a physical, mental, or emotional impairment that is expected to be of a long continued and indefinite duration." (R. 462).

I conclude that the ALJ properly gave this opinion little weight. As noted above, whether an individual is disabled for purposes of SSI or DIB is an issue reserved for the Commissioner. Moreover, in assessing this opinion and giving it little weight, the ALJ recognized that Dr. Patel's opinion was inconsistent with the other evidence in the record that established that Favors had moderate, not marked, limitations in understanding, remembering, and applying information; concentrating, persisting, and maintaining pace; and adapting and managing herself. (R. 21); *cf. Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (providing that ALJ may reject treating physician's opinion if there is contradictory medical evidence in the record).

The ALJ also gave little weight to the opinion of Daniel Gollin, M.D., a psychiatric consultant. (R. 21, 342-44). In March of 2013, Favors underwent a psychiatric evaluation with Dr. Gollin, before she began treatment at UCPC Behavioral Healthcare. (R. 342-44). Dr. Gollin assessed post-traumatic stress disorder (PTSD), mood disorder, alcohol dependence, and borderline personality disorder. (R. 344). Dr. Gollin opined that Favors "is not work-ready at this time, although once medication is adjusted and symptoms stabilized, she may become work-ready." (R. 344). Dr. Gollin prescribed Favors medication and recommended therapy. (R. 344).

In assessing Dr. Gollin's opinion, the ALJ ascribed it little weight because Dr. Gollin did not indicate permanently disabling limitations or accurately describe her overall ability to function, (R. 21). *See* 20 C.F.R. § 416.909

(providing that to be disabling, an impairment must be expected to result in death or last at least twelve continuous months in duration). Moreover, the ALJ explained that subsequent evidence showed that Favors, as predicted, had a positive response to medication and treatment. (R. 21). Accordingly, the ALJ properly evaluated Dr. Gollin's opinion, and explained his permissible reasons for giving it little weight.

Finally, the ALJ also ascribed "little weight" to the opinion of Ernesto Perdomo, Ph.D. (R. 20). Dr. Perdomo provided a functional assessment of Favors based on one interaction. (R. 20). Dr. Perdomo opined that Favors's depression and personality disorder "may affect her ability to function effectively." (R. 20, 361-63).

The ALJ recognized that Dr. Perdomo's opinion was "vague and conclusory," and failed to provide a "specific function-by function analysis regarding the claimant's ability to perform work related activities." (R. 20). The ALJ also recognized that Dr. Perdomo's opinion was inconsistent with other evidence in the record, which showed only moderate limitations. (Id.).

As recognized above, it is not the job of this Court to "re-weigh the medical opinions of record." Hatton, 131 F. App'x at 880. This Court's focus is on whether the ALJ's weighing of "such opinions was supported by substantial evidence." Id. Based on the evidence in the record and the ALJ's stated reasons, the Court finds that the ALJ's determination of how much weight to give the medical opinions was supported by substantial evidence in the record.

## IV.  Conclusion

The ALJ's decision was supported by substantial evidence in the record. The ALJ also properly provided his reasons for ascribing little weight to certain medical opinions.

The ALJ's decision is therefore affirmed. An appropriate order accompanies this Opinion.

Dated: February 26, 2018

**KEVIN MCNULTY**
**United States District Judge**